[No. H016845. Sixth Dist. Dec. 9, 1998.]

ROSEMARY BECERRA, Plaintiff and Appellant, v.
COUNTY OF SANTA CRUZ, Defendant and Respondent.

COUNSEL

Marcie D. Hansen for Plaintiff and Appellant.

Dwight L. Herr, County Counsel, and Ellen Lewis, Assistant County Counsel, for Defendant and Respondent.

Ruth Sorensen for County of Santa Cruz as Amicus Curiae on behalf of Defendant and Respondent.

OPINION

**COTTLE, P. J.**—Plaintiffs, the mother and siblings of a child who was murdered on the grounds of an elementary school, brought suit against defendant County of Santa Cruz (County), alleging negligence and breach of mandatory duties. Plaintiffs claimed that the County acted improperly in its placement of the child in a foster home, and in its subsequent supervision of the child's situation. The trial court granted the County's motion for summary judgment, and the child's mother appeals from the resulting judgment. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following facts, taken from the factual showings made by the parties during the summary judgment proceedings, are essentially undisputed.

Mariana Zavala, who was born in April 1977, was the daughter of appellant Rosemary Becerra, and the sister of Carlos, Juanito and Anthony Becerra. In December 1991, Rosemary Becerra went to Mexico and left Mariana with a neighbor. On January 14, 1992, the neighbor contacted the County of Santa Cruz Child Protective Services (CPS), stated that she was no longer prepared to care for the child, and asked CPS to take custody of Mariana. On January 14, 1992, Mariana was placed in the protective custody of CPS. After an initial emergency placement, on January 16, 1992, CPS placed Mariana with Chris Gonzales, who is licensed to provide foster care in the County.

On January 16, 1992, CPS Social Worker Linda Hogan made an assessment after consultation with Mariana's mental health care provider, and a review of Mariana's CPS case history. Hogan assessed Mariana's overall risk as low. Hogan recommended placement with Chris Gonzales until the court decided disposition. In choosing the Gonzales foster home, Hogan considered the following factors: Mariana's ability to continue attending

special education classes at her high school, Mrs. Gonzales's commitment to facilitate Mariana's continued treatment with her mental health counselor, the foster family's prior success with teens, and the proximity of the Gonzales home to Mariana's mother's residence to facilitate family reunification.[1]

Hogan contacted Gonzales to discuss placing Mariana with her. Hogan also met with Gonzales and Mariana at the time of placement. At that time, she discussed the circumstances existing between Mariana and her mother, and discussed with Gonzales her need to facilitate Mariana's attendance at counseling and special education classes.

On January 21, 1992, the juvenile court ordered Mariana detained pursuant to section 315 of the Welfare and Institutions Code. A service plan agreement submitted to the court on January 21, 1992 (covering the period from January 21 to February 28, 1992), detailed CPS's plan to reunify Mariana with her mother.[2]

Mariana's placement at the Gonzales home was reviewed and approved by the CPS program manager on February 5, 1992. On February 6, 1992, a hearing was held to determine whether the court would take jurisdiction over Mariana. At the hearing, CPS requested a continuance until April 9, 1992, so that Mariana and her mother, Rosemary Becerra, could begin counseling. The mother, represented by counsel, agreed to this continuance. Mariana's counsel agreed to the continuance on the condition that Mariana remain at the Gonzales foster home, a licensed foster home where the child was happy.

At this same hearing, the mother told the court that she believed that her daughter was not receiving adequate supervision in the Gonzales foster home. Counsel for Mariana stated that she had inquired into the mother's allegations of inadequate supervision, and had discussed the issue with Mariana and the foster mother, and was convinced that the Gonzales foster home was providing adequate supervision. The court declined to make any change in Mariana's placement, and continued the hearing until April 9, 1992.

On or about the morning of February 10, 1992, Mariana was found murdered at Freedom Elementary School.

[1]Hogan's consideration of these factors is directly supported by her declaration. Although appellant contends that it is disputed, we do not consider appellant's argument regarding how these factors should have been evaluated or appellant's disagreement with Hogan's decision to be facts demonstrating a conflict in the evidence.

[2]After reviewing the record, including the case plan at issue, we reject appellant's effort to dispute this evidence by arguing that "one purpose of CPS" was to "prevent any association and unification between" the mother and the child.

During the 26 days Mariana was in the protective custody of CPS, CPS social workers had numerous contacts, mostly by telephone, with various persons regarding Mariana. After Mariana's murder, an investigation was conducted of the Gonzales foster family by various state and local licensing agencies. The State Department of Social Services found no evidence that Mariana's death was due to any act or omission by the Gonzales foster parents.

Matias Soto was convicted of murder in the first degree for killing Mariana. Soto's conviction was affirmed by this court on July 30, 1997.

On or about December 29, 1992, Mariana's mother and siblings filed this suit. Plaintiffs initially named as defendants the foster parents (Christina and Richard Gonzales), Green Valley Apartments, its security company, the Pajaro Valley Unified School District, the State of California, and the County. Plaintiffs' complaint against the Gonzales foster family for negligent supervision was dismissed after hearing a demurrer on procedural grounds, and the dismissal was affirmed by this court on appeal. (*Becerra* v. *Gonzales* (1995) 32 Cal.App.4th 584 [38 Cal.Rptr.2d 248].) Other defendants have also been dismissed by demurrer or on motion for summary judgment, and are not involved in this appeal.

Against the County, plaintiffs' first amended complaint alleged two causes of action: breach of mandatory duty and negligence. Essentially, plaintiffs claimed that the County breached a mandatory duty because it "failed to adequately investigate the special needs of decedent for supervision, failed to assess the effect of placement of decedent within one mile of the Green Valley Apartments, failed to adequately supervise . . . the Gonzales[es], and failed to remove decedent from the care of the Gonzales[es] when they were informed that the foster parents were not adequately supervising decedent." Plaintiffs also alleged that the County was negligent in "neglecting to investigate [Mariana's] special needs, by failing to place her in a foster home selected in accordance with those needs and once decedent was placed, by failing to monitor, supervise and control the foster parents in order to protect decedent from harm."

On or about January 29, 1997, the County moved for summary judgment, arguing (1) that plaintiffs could recover against the County only under a statutory cause of action; (2) that plaintiffs could not show the elements of a prima facie case under Government Code section 815.6; and (3) that the County was immune from liability on the basis of Government Code section 820.2. After considering extensive briefing by the parties and oral argument, the trial court granted the County's motion at a hearing on March 20, 1997.

The court's written order granting summary judgment was filed on April 4, 1997, and the resulting judgment was filed on May 15, 1997. The mother, Rosemary Becerra, appeals from the judgment.[3]

## II. DISCUSSION

### A. *Standard of Review*

■ Because a summary judgment motion raises only questions of law, we review the supporting and opposing papers independently to determine whether there is a triable issue as to any material fact. (Code Civ. Proc., § 437c, subd. (c); *AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].) In doing so, we apply the same analysis required of the trial court. "First, we identify the issues framed by the pleadings. . . . [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. . . . [¶] . . . [T]he third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citations.]" (*Id.* at pp. 1064-1065.) Where there is sufficient legal ground to support the granting of the motion, the order will be upheld regardless of the grounds relied upon by the trial court. (*Troche* v. *Daley* (1990) 217 Cal.App.3d 403, 407 [266 Cal.Rptr. 34].) We evaluate the summary judgment granted here as to each of appellant's claims in light of these principles.

### B. *Liability of Public Entities*

■ In California, all government tort liability must be based on statute. Government Code section 815 provides: "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (Gov. Code, § 815, subd. (a).) As the court noted in *Harshbarger* v. *City of Colton* (1988) 197 Cal.App.3d 1335 [243 Cal.Rptr. 463], this section " 'abolished all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the federal or state Constitution. Thus, in the absence of some constitutional requirement, public entities may be liable *only* if a statute declares them to be liable.' " (*Id.* at p. 1339; see *Cochran* v. *Herzog Engraving Co.* (1984) 155 Cal.App.3d 405, 409 [205 Cal.Rptr. 1].)

---

[3]Appellant's notice of appeal was filed after rendition of the judgment but prior to entry of the judgment. Pursuant to rule 2(c) of the California Rules of Court, we deem the notice to have been filed immediately after entry of the judgment.

In this case, appellant attempts to impose liability on the County pursuant to two different statutes: (1) Government Code section 815.6, which generally provides for *direct* liability of a government entity for failure to discharge a mandatory duty, and (2) Government Code section 815.2, subdivision (a), which provides, under certain circumstances, for the entity's *derivative* liability for acts or omissions of employees.

## C. *Direct Liability Pursuant to Government Code Section 815.6*

Government Code section 815.6 provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

In *State of California* v. *Superior Court* (1984) 150 Cal.App.3d 848, 854 [197 Cal.Rptr. 914], the court stated: "Government Code 815.6 contains a three-pronged test for determining whether liability may be imposed on a public entity: (1) an enactment must impose a mandatory, not discretionary, duty . . . ; (2) the enactment must intend to protect against the kind of risk of injury suffered by the party asserting section 815.6 as a basis for liability . . . ; and (3) breach of the mandatory duty must be a proximate cause of the injury suffered." (*Ibid.*, citations omitted.) Whether an enactment is intended to impose a mandatory duty is a question of law for the court. (See *Nunn* v. *State of California* (1984) 35 Cal.3d 616, 624 [200 Cal.Rptr. 440, 677 P.2d 846]; *Fox* v. *County of Fresno* (1985) 170 Cal.App.3d 1238, 1242 [216 Cal.Rptr. 879].)

One of the essential elements that must be pled is the existence of a specific statutory duty. (*Searcy* v. *Hemet Unified School Dist.* (1986) 177 Cal.App.3d 792, 802 [223 Cal.Rptr. 206].) "Duty cannot be alleged simply by stating 'defendant had a duty under the law'; that is a conclusion of law, not an allegation of fact. The facts showing the existence of the claimed duty must be alleged. [Citation.] Since the duty of a governmental agency can only be created by statute or 'enactment,' the statute or 'enactment' claimed to establish the duty must at the very least be identified." (*Id.* at p. 802.) Therefore, a " '. . . litigant seeking to plead the breach of a mandatory duty must specifically allege the applicable statute or regulation.' " (*Sullivan* v. *City of Sacramento* (1987) 190 Cal.App.3d 1070, 1080 [235 Cal.Rptr. 844].) "Unless the applicable enactment is alleged in specific terms, a court cannot determine whether the enactment relied upon was intended to impose an obligatory duty to take official action to prevent foreseeable injuries or whether it was merely advisory in character." (*Ibid.*)

■ In her appellate brief, appellant refers to three statutes allegedly prescribing mandatory duties the County did not perform: Welfare and Institutions Code section 16501.1, Family Code section 7950, and Welfare and Institutions Code section 361.3.

First, we note that Family Code section 7950 (Civ. Code, former § 275 at the time of Mariana's placement) concerns priorities for foster care placement, including the racial and ethnic identification of foster parents, and does not pertain to the issues contested in this case. Welfare and Institutions Code section 361.3 applies to considerations regarding placement of a child with relatives, rather than to placement of the child in a foster home, and is also inapplicable to the disputes between the parties here. We therefore consider whether the third statute cited by appellant, Welfare and Institutions Code section 16501.1, creates a mandatory duty.

Mariana was placed out of her own home after the court ordered her detained pursuant to Welfare and Institutions Code section 315 because she had no one available to parent her. In such cases, out-of-home placement of the child is governed by Welfare and Institutions Code section 16000 et seq.

At the time of Mariana's placement in January 1992, former section 16501.1 of the Welfare and Institutions Code provided: ". . . (c) When out-of-home placement is used to attain case plan goals, the decision regarding choice of placement shall be based upon selection of the least restrictive or most familylike setting, selection of the environment best suited to meet the child's special needs and best interests, or both. The selection shall consider, in order of priority, placement with relatives, tribal members, and foster family, group care, and residential treatment pursuant to Section 275 of the Civil Code." (Stats. 1991, ch. 1203, § 12, p. 5876.)

Appellant alleges that the County violated the duty set forth in Welfare and Institutions Code former section 16501.1 because the County placed Mariana at the Gonzales foster care home, which was not "the environment best suited to meet the child's special needs and best interests, or both."

After considering Welfare and Institutions Code section 16501.1 and its goals, we are not persuaded by appellant's argument. Section 16501.1 requires CPS social workers to analyze the selection criteria prior to placement of the child. The statute does not, however, specify the ultimate placement that must be made, or dictate that any one factor is controlling. Although the statute provides a general policy statement by which social workers are to be guided, it does not require a particular result, or specify the "special needs" or "best interests" of the child. These factors, sometimes

difficult and subjective, are left to the judgment of the social worker placing the child.

We are not convinced that the statute required the social worker, in this case, to place Mariana in a certain neighborhood, or according to the wishes of her mother. We agree with the County that to the extent that there is a "mandatory duty" imposed upon the County by Welfare and Institutions Code section 16501.1, subdivision (c), it is to evaluate the stated criteria prior to making a placement selection.

In this case, the undisputed facts presented to the trial court in the summary judgment proceedings show that CPS Social Worker Linda Hogan analyzed the selection criteria enumerated in Welfare and Institutions Code section 16501.1, subdivision (c) prior to placing Mariana in the Gonzales foster home. She evaluated Mariana's needs, obtained a commitment from Chris Gonzales to facilitate continued meetings between Mariana and her mental health counselor, ensured that the placement allowed Mariana to continue attending the same high school where she was enrolled in special education classes, and selected a placement with a previously successful foster family which provided a family-like setting close to her mother's home to facilitate the goal of reunification. It is also undisputed that this placement decision was reviewed and approved by the CPS program manager on February 5, 1992.

Because we hold that the mandatory duty imposed by Welfare and Institutions Code section 16501.1 was the County's assessment of the statutory factors as part of its placement decision, and the undisputed facts show that the required assessment was made here, appellant has not demonstrated a triable issue of fact regarding any breach of a mandatory duty by the County. The social workers made a placement assessment consistent with their statutory mandate, evaluating the required criteria, and the County fulfilled its statutory duty.

Appellant argues that the facts are disputed because Mariana's "need" was to reside some distance from the mother's apartment, and that the Gonzales home (near the mother's apartment) did not serve the child's "best interests." Although the mother's view shows a difference of opinion on these difficult subjective issues, we are not persuaded that it amounts to a showing that the County social workers failed to discharge their mandatory duty under the statute.[4] The statute does not require a particular result, or agreement among the parties involved, but an assessment by the social workers placing the

---

[4]In fact, appellant's argument that the County should be liable for placing the child *too close* to her mother's residence is inconsistent with both the service plan in this case, which

child, a task the social workers here clearly completed. To hold otherwise, finding a possible breach of mandatory duty under Government Code section 815.6 whenever a party disagreed with the social worker's placement decision and or whenever hindsight shows that a different placement might have been more beneficial, would seriously undermine the County's ability to handle foster placements.

In addition to the statutes discussed above, appellant also argues that the County breached various other duties to Mariana, such as a duty to inform the foster parents about the girl's background, special problems and history and a duty "to insure the girl was placed in a location that would not permit her to return to the harmful environment from which she was to be removed." Appellant has not, however, shown any statute or other enactment imposing these alleged duties. As noted earlier, liability under Government Code section 815.6 is predicated upon an enactment establishing a mandatory duty, and the statute or "enactment" claimed to establish the duty must be identified. (*Searcy* v. *Hemet Unified School District, supra*, 177 Cal.App.3d at p. 802.) As a result, these "duties" alleged by appellant do not provide a basis for liability under Government Code section 815.6.

### D. *Derivative Liability Pursuant to Government Code Section 815.2*

■ As noted above, appellant also seeks to hold the County liable for the acts of its employees pursuant to Government Code section 815.2. Section 815.2 provides: "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative. [¶] (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

Section 815.2 thus imposes upon public entities vicarious liability for the tortious acts and omissions of their employees, and makes it clear that in the absence of statute a public entity cannot be held liable for an employee's act or omission where the employee himself or herself would be immune.

---

lists as its goal the "return of Mariana by 2/31/92," an objective to "[i]mprove [the mother's] relationship with Mariana" and plans for counseling of the mother until Mariana could be brought in for joint sessions. We note also that in placing a child, social workers are required to give "full consideration for the proximity of the natural parents to the placement so as to facilitate visitation and family reunification . . . ." (Fam. Code, § 7950, subd. (a); see former Civ. Code, § 275.)

(Legis. com. com., 32 West's Ann. Gov. Code (1995 ed.) foll. § 815.2, p. 179.)[5]

Appellant alleges that the County social workers, who had a "special relationship" with the child, breached a duty of care through negligent placement and supervision, and that the County is vicariously liable for their negligence. The County argues that it may not be held liable, because its social workers' actions were immune from tort liability pursuant to Government Code sections 815.2 and 820.2.

For purposes of analyzing appellant's claims, we assume that the County owed a duty of care to Mariana, a child who was (at least temporarily) placed under the County's protective custody, and that a negligent breach of that duty would result in liability. We therefore focus on whether the social workers' actions were entitled to immunity.

### 1. Immunity for Placement Decisions

Government Code section 820.2 provides that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." The County argues that this statutory immunity for discretionary decisions prevents liability for the County's foster care placement decisions.

The County relies primarily upon two cases, *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701]; and *Ronald S.* v. *County of San Diego* (1993) 16 Cal.App.4th 887 [20 Cal.Rptr.2d 418]. These cases hold, respectively, that the selection of a custodian for a delinquent juvenile and the selection of an adoptive home for a dependent child are discretionary activities immune from liability pursuant to Government Code section 820.2. From the reasoning underlying those decisions, we are persuaded that the determination to place a child in a particular foster home is also immune from liability pursuant to Government Code section 820.2.

In *Thompson* v. *County of Alameda, supra*, 27 Cal.3d 741, a county released a juvenile offender on temporary leave into his mother's custody at

---

[5]Plaintiffs did not name any individual defendants in connection with the causes of action against the County. Identification of a specific employee tortfeasor is not essential to County liability under section 815.2. The legislative committee comment to section 815.2 states: "[I]t will not be necessary in every case to identify the particular employee upon whose act the liability of the public entity is to be predicated. All that will be necessary will be to show that some employee of the public entity tortiously inflicted the injury in the scope of his employment under circumstances where he would be personally liable." (Legis. com. com., 32 West's Ann. Gov. Code, *supra*, foll. § 815.2, p. 179.)

her home. The juvenile offender subsequently killed a five-year-old neighbor. The plaintiffs alleged, among other claims, that the county negligently chose the juvenile's mother as custodian, and failed to supervise the mother's activities. (*Id.* at p. 748.) The trial court dismissed the case after sustaining a demurrer without leave to amend.

The Supreme Court affirmed. The Supreme Court held that the selection of a custodian for a juvenile offender was a discretionary act within the immunity provided by Government Code section 820.2. "The discretionary nature of the selection of custodians for potentially dangerous minors and the determination of the requisite level of governmental supervision for such custodians becomes apparent when the underlying policy considerations are analyzed. Choosing a proper custodian to direct the attempted rehabilitation of a minor with a prior history of antisocial behavior is a complex task. . . . The determination involves a careful consideration and balancing of such factors as the protection of the public, the physical and psychological needs of the minor, the relative suitability of the home environment, the availability of other resources such as halfway houses and community centers, and the need to reintegrate the minor into the community. The decision, requiring as it does, comparisons, choices, judgments, and evaluations, comprises the very essence of the exercise of 'discretion' and we conclude that such decisions are immunized under section 820.2." (*Thompson* v. *County of Alameda, supra,* 27 Cal.3d at pp. 748-749.)

Similarly, in *Ronald S.* v. *County of San Diego, supra,* 16 Cal.App.4th 887, the court found that the county was immune from liability pursuant to Government Code sections 820.2 and 815.2 in its selection of an adoptive home for a dependent child. Relying on *Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], the court held that preadoption work of the social service employees of the county constituted a discretionary activity protected by immunity under Government Code section 820.2. "The nature of the investigation to be conducted and the ultimate determination of suitability of adoptive parents bear the hallmarks of uniquely discretionary activity. The decisions made in the adoption process are by nature highly subjective. . . . There is no way that the following of forms or rules or agency procedures could transmute this most subjective decisionmaking process into a ministerial act. Following the *Johnson* admonition to courts not to second-guess policy decisions of other branches of government, we opine that second-guessing adoption decisions, and imposing civil liability upon public servants when the decision turns out to be wrong, would severely interfere with and surely impede the proper workings of the responsible social service department." (*Ronald S.* v. *County of San Diego, supra,* 16 Cal.App.4th at p. 897.)

In this case, as in the *Thompson* and *Ronald S.* decisions upon which the County relies, the choice of a foster home for a dependent child is a complex task requiring the consideration and balancing of many factors to achieve statutory objectives. County social workers evaluated numerous subjective factors in determining what they believed to be the appropriate placement for Mariana. The required choices and judgments resulted in a carefully considered decision by the proper authorities in a coordinate branch of government. For these reasons, the foster home placement was a discretionary decision for which the social workers (pursuant to Gov. Code, § 820.2) and the County (pursuant to Gov. Code, § 815.2) are entitled to immunity from tort liability.

We have considered the case of *Elton* v. *County of Orange* (1970) 3 Cal.App.3d 1053 [84 Cal.Rptr. 27], upon which appellant relies. In *Elton*, a case heard at the demurrer stage, the court stated that decisions regarding the maintenance, care and supervision of a dependent child in a foster home did not achieve the level of basic policy decisions and thus were not entitled to immunity under Government Code section 820.2. (3 Cal.App.3d at p. 1058.) *Elton* is distinguishable from this case on at least two important grounds. First, in *Elton*, the County attempted to assert immunity at the demurrer stage, where the facts supporting the discretionary decisions by county employees were not before the court.[6] Second, *Elton* was decided in 1970, many years before the adoption of current statutes (such as Welf. & Inst. Code, § 16501.1) requiring that social workers engage in a discretionary analysis of the needs and interests of a dependent child. Consequently, we do not believe that the analysis in *Elton* applies to the summary judgment at issue here. In addition, the court in *Ronald S.* v. *County of San Diego, supra*, 16 Cal.App.4th 887, distinguished its own decision from *Elton*. Calling *Elton* a "difficult decision," the court stated: "Selecting and certifying a foster home for care of dependent children seems to us to be an activity loaded with subjective determinations and fraught with major possibilities of an erroneous decision. It appears to us that foster home placement, like adoption placement, constitutes an activity of a co-equal branch of government, and that the discretionary decisions made in connection therewith should be deemed beyond the proper scope of court review." (*Ronald S.* v. *County of San Diego, supra*, 16 Cal.App.4th at p. 898.) We agree with this analysis, and hold that the placement decision in this case was immune from liability.

---

[6]The court in *Elton* noted that for immunity to apply, a public agency must demonstrate that its employee consciously exercised discretion in order to invoke the "discretionary acts" immunity provisions of Government Code section 820.2, and stated that "[s]uch a showing was not and could not have been made by the county at the demurrer stage . . . ." (3 Cal.App.3d at p. 1058.)

## 2. *Immunity for Supervision*

█ Appellant also argues that the "negligence of the County was not in making its pre-placement assessment of Mariana, but in failing to supervise, investigate and intervene when placed on notice that she was not receiving adequate supervision." According to appellant, supervision of Mariana's placement was not a basic policy decision entitled to immunity, but a mere ministerial duty of carrying out the requirements of policies established at the state level.

In its summary judgment motion, the County made a detailed showing of its involvement in Mariana's case during the 26-day period after she was placed in protective custody on January 14, 1992. The County's showing included the declaration of the CPS social worker, the declaration of the CPS program manager responsible for ensuring that CPS complied with state laws and regulations regarding the placement of dependent children in foster care, and a "contact sheet" showing the social workers' extensive telephone contacts with the mother, the foster mother, a counselor, and others regarding Mariana from December 30, 1991, to February 9, 1992. These documents show that the level of CPS involvement exceeded the case plan's requirement of one in-person visit per thirty-day period. In addition, the record also includes transcripts of the hearing on February 6, 1992, at which the mother raised the issue of adequate supervision, and Mariana's counsel stated that she had investigated the issue and believed that supervision was adequate.

The County's factual showing demonstrates that the placement decision here was monitored in accordance with statute by CPS, as well as by counsel representing Mariana and by the superior court. On the undisputed facts of this case, appellant has made no showing that the level of services provided by social workers and other County employees failed to satisfy the applicable statutes or regulations.[7]

Appellant apparently contends, however, under the facts of this case (including Mariana's past problems, complaints about her rebellious activities, and the mother's complaints about the foster parents' supervision) that

---

[7]This case is not similar to *Scott* v. *County of Los Angeles* (1994) 27 Cal.App.4th 125 [32 Cal.Rptr.2d 643], in which social workers failed to provide services required by regulation. In *Scott*, a child was placed in foster care with her grandmother, and the social worker failed to follow a regulation that required monthly face-to-face contact with the child and foster parent. The child was severely injured by her grandmother, and a jury awarded damages against the county for negligent supervision of the child's foster care. The court held that the regulation regarding monthly visits constituted a mandatory requirement, that the social worker had no discretion to fail to visit the child on a monthly basis, and that the omission was not entitled to immunity under Government Code section 820.2. (27 Cal.App.4th at p. 142.)

the County was required to "supervise, intervene, and remove the child from the detrimental environment, and place her in a more secure environment and/or in a location sufficiently distant from the negative influences of the schoolyard." Appellant maintains that the County employees were required to do this as part of their ministerial duties in "supervising" the placement.

We are not persuaded that the intervention and change in placement advocated by appellant are any less "discretionary" for purposes of the immunity of Government Code section 820.2 than the original placement decision, which we have held to be immune from liability. In *Thompson* v. *County of Alameda, supra,* 27 Cal.3d 741, regarding a juvenile offender placed in his mother's custody who killed a young child in the neighborhood, the Supreme Court held that a county was immune from liability "for its selection of a custodian as well as for its determination of the appropriate degree of supervision of the custodian's efforts." (*Id.* at p. 749.)

Even if some activities in monitoring a placement might be considered ministerial (an issue we do not decide), the ultimate decision about which appellant complains here, whether to intervene and discontinue a child's placement, is a discretionary placement decision. Like the adoption placement decision in *Ronald S.* v. *County of San Diego, supra,* 16 Cal.App.4th 887, it bears the hallmarks of uniquely discretionary activity. "There is no way that the following of forms or rules or agency procedures could transmute this most subjective decisionmaking process into a ministerial act." (*Id.* at p. 897.)

In this case, the social worker's handling of Mariana's placement within statutory and regulatory guidelines, including the failure to remove her from the Gonzales foster home, were discretionary decisions within the immunity of Government Code section 820.2. Because County employees are immune, the County is similarly immune from liability (see Gov. Code, § 815.2, subd. (b)), and the County's summary judgment motion was properly granted.

## DISPOSITION

The judgment is affirmed.

Premo, J., and Elia, J., concurred