Filed 2/25/25  B.B. v. County of Kern CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| B.B.,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>COUNTY OF KERN,<br><br>  Defendant and Respondent. | F087536<br><br>(Kern Super. Ct. No. BCV-22-103208)<br><br>**MODIFICATION OF OPINION [NO CHANGE IN JUDGMENT] AND ORDER DENYING REQUESTS FOR PUBLICATION** |

It is ordered that the opinion herein filed on January 29, 2025, be modified as follows:

1.  On page 1, the designation of counsel for defendant and respondent is deleted and replaced with:

DeMaria Law Firm and Anthony N. DeMaria, for Defendant and Respondent.

This modification does not effect a change in the judgment.

The four requests for publication of the opinion filed on February 18, 2025, on behalf of (1) County of Kern, (2) Herum Crabtree Suntag, (3) California State Association of Counties, and (4) City and County of San Francisco, are hereby denied. The opinion does not establish a new rule of law, nor does it meet any of the other criteria set forth in California Rules of Court, rule 8.1105(c).

In compliance with California Rules of Court, rule 8.1120(b), the Clerk/Executive Officer of this court shall transmit copies of the requests for publication, the opinion, and this order to the Supreme Court.

DETJEN, Acting P. J.

WE CONCUR:

SMITH, J.

MEEHAN, J.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| B.B.,<br><br>   Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF KERN,<br><br>   Defendant and Respondent. | F087536<br><br>(Super. Ct. No. BCV-22-103208)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Bernard C. Barmann, Jr., Judge.

Herman Law and Ryan D. Harvey, for Plaintiff and Appellant.

Demaria Law Firm and Anthony N. Demaria, for Defendant and Respondent.

-ooOoo-

---

[*]      Before Detjen, Acting P. J., Smith, J. and Meehan, J.

Plaintiff B.B. was sexually abused when she was 12 years old and living in a foster home she had been placed in by defendant, the County of Kern (County). Plaintiff disclosed the abuse to her assigned social worker, but plaintiff was not immediately removed from the foster home and the abuse continued. Plaintiff filed a personal injury lawsuit for negligence against the County. The trial court sustained the County's demurrer without leave to amend on the grounds the County's employees were entitled to discretionary act immunity for foster care placement and removal decisions, and plaintiff failed to state a cause of action for breach of a mandatory duty by the County. Plaintiff appealed from the subsequent judgment of dismissal.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In approximately 1972, the County placed plaintiff in a foster home with the Brown family. When plaintiff was about 12 years old, she was sexually abused and assaulted by her foster father, D.B., while residing in the Browns' home. D.B. fondled plaintiff's vagina and breasts under her clothing and forced plaintiff to fondle his penis. Plaintiff disclosed the sexual abuse to J.M., the social worker assigned to plaintiff's case by the County. The County did not immediately remove plaintiff from the foster home and D.B. continued to sexually abuse plaintiff daily over a period of about three months.

On November 29, 2022, plaintiff filed her original complaint against the County.[1] The operative complaint is the second amended complaint (SAC) plaintiff filed in June 2023 after the trial court sustained the County's demurrer to the first amended complaint

---

[1] Plaintiff alleged D.B.'s conduct constituted "childhood sexual assault" pursuant to Code of Civil Procedure section 340.1. Effective January 1, 2020, Code of Civil Procedure section 340.1 was amended to extend the limitations period for an action for damages for childhood sexual assault. (Stats. 2019, ch. 861, § 1.) The statute was amended again effective January 1, 2024, to eliminate time limits for such an action. (Stats. 2023, ch. 655, § 1.)

with leave to amend in May 2023.[2]  The SAC asserted negligence by the County under theories of direct and vicarious liability as follows:  (1) direct liability for the County's failure to discharge various mandatory duties under Government Code[3] section 815.6;[4] and (2) vicarious liability under sections 815.2, 815.4, and 820 for the failure of County employees, agents and/or independent contractors to protect plaintiff from sexual abuse while under the County's custody in foster care.  The SAC alleged J.M. breached her duty of care to plaintiff because J.M. had actual knowledge of the sexual assault and abuse based on plaintiff's report to J.M. but did not take any action to prevent the abuse which continued.  The County allegedly breached its duties by :  (1) failing to protect plaintiff from sexual abuse, sexual assault and lewd and lascivious acts; (2) failing to adequately, properly and completely investigate whether plaintiff was safe and free from maltreatment; (3) failing to adequately, properly and completely investigate D.B.'s acts and conduct of sexual abuse of plaintiff; (4) failing to establish policies and procedures that were adequate to protect the health, safety and welfare of children and protect them from sexual abuse; (5) failing to implement and enforce policies and procedures that were adequate to protect the health, safety and welfare of foster children and protect them from sexual and physical abuse; (6) failing to adequately monitor and supervise plaintiff; (7) failing to adequately hire and train employees, agents and case workers;

---

[2]    The demurrer to the first amended complaint and order sustaining that demurrer are not in the record before us.

[3]    Undesignated statutory references are to the Government Code.

[4]    Section 815.6 provides for liability to a public entity for failure to discharge a mandatory statutory duty.  The SAC asserted the County failed to discharge mandatory duties set forth in Welfare and Institutions Code sections 328, 16501, subdivision (f), and 16504; Health and Safety Code section 1522 et seq.; Penal Code sections 11165.7, 11165.9, and 11166; and Department of Social Services Child Welfare Services Manual sections 31−320, 31−401 et seq. and 31−501.  Because plaintiff expressly does not challenge the trial court's finding regarding direct liability for breach of a mandatory statutory duty, we primarily focus on the allegations grounded in vicarious liability.

(8) concealing their knowledge that D.B. was unsafe and posed a risk of sexual abuse; and (9) failing to report suspected sexual abuse of a minor to law enforcement. Plaintiff alleged the County failed to conduct visits to plaintiff's foster care placement that were of sufficient frequency and/or reasonably calculated to determine whether plaintiff was safe and not being subjected to maltreatment while in foster care, and the supervisory visits by the County's employees to the foster home were brief, superficial, and perfunctory. It was alleged actual and/or constructive notice of the sexual abuse was given to the County, but its employees/agents failed to act upon the information to protect plaintiff from sexual abuse. The SAC further alleged the County's employees, agents and/or independent contractors knew or should have known of D.B's sexual abuse of minors placed in the Browns' home but failed to properly investigate such abuse or remove plaintiff from the home, due to which plaintiff suffered sexual assault and abuse. Plaintiff claimed if the County had provided her with reasonable care and protection, including proper background checks on the foster home, meaningful case worker visits, investigations into reported sexual abuse and assaults and/or maltreatment, and removal of plaintiff from the offending foster placement, the sexual assault of plaintiff could have been prevented.

On July 20, 2023, the County filed a demurrer asserting: (1) the County's social workers are immune from liability for their foster care placement and removal decisions, and (2) plaintiff had failed to state a cause of action for breach of a mandatory duty. Plaintiff opposed the demurrer.

The trial court issued an order sustaining the County's demurrer without leave to amend on September 2, 2023. The court dismissed the SAC with prejudice on November 28, 2023, and notice of entry of judgment was served on the same date. Plaintiff filed a timely notice of appeal.

## DISCUSSION

On appeal, plaintiff challenges only the trial court's finding the County's

4.

employees are entitled to discretionary act immunity for their foster care placement and removal decisions.[5]  Specifically, plaintiff contends:  (1) there is no basis for a demurrer based on discretionary act immunity because the SAC's allegations do not demonstrate the County's exercise of discretionary decision making; (2) acts and omissions in supervising foster care are operational or ministerial and therefore not protected by discretionary act immunity; and (3) court of appeal decisions that are in conflict with Supreme Court precedent are invalid.

## I.    Standard of Review

"In reviewing the sufficiency of a complaint against a general demurrer, … 'we treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed.'  [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

We review de novo an order sustaining a demurrer.  (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.)  "Although we exercise our independent judgment in reviewing a demurrer to determine whether the factual allegations of the complaint state a cause of action [citation], we must affirm if the trial

---

[5]    Plaintiff expressly does not contest the trial court's finding the County was not liable for breach of a mandatory duty under section 815.6.

court's decision to sustain the demurrer was correct on any theory." (*Trinkle v. California State Lottery* (1999) 71 Cal.App.4th 1198, 1201; *Carman v. Alvord* (1982) 31 Cal.3d 318, 324 [a judgment of dismissal after a demurrer has been sustained will be affirmed if proper on any grounds stated in the demurrer].)

## II.    Liability and Immunity of Public Entities

### A.    Governing Legal Principles

Under the Government Claims Act (§ 810 et seq.) " 'a public entity is not liable for injury arising from an act or omission except as provided by statute.' " (*Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 932; § 815, subd. (a).) "Thus, in California, all government tort liability must be based on statute." (*Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 785, fn. 2.)

Section 820 provides that a public employee is generally "liable for injury caused by his act or omission to the same extent as a private person" except as otherwise provided by statute. (§ 820, subd. (a).) Under section 815.2, "public entities are vicariously liable for the torts of their employees." (*Caldwell v. Montoya* (1995) 10 Cal.4th 972, 980 (*Caldwell*).)[6] Section 815.4 similarly provides that a public entity is vicariously liable for the torts of its independent contractors. Together, sections 815.2 and 820 establish the general rule that an employee of a public entity is liable for his or her torts to the same extent as a private person and the public entity is vicariously liable for any injury which its employee causes to the same extent as a private employer. (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 868.)

---

[6]    Section 815.2 states: "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative. [¶] (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

California's common law "long provided that a governmental official has personal immunity from lawsuits challenging his or her discretionary acts within the scope of authority." (*Caldwell*, *supra*, 10 Cal.4th at p. 979.) This traditional immunity was codified in section 820.2, which provides that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Another immunity provision, section 821.6 states a "public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Where the public employee is immune, the public entity is also immune except as otherwise provided by statute. (*Caldwell*, at p. 980; § 815.2, subd. (b).)

"[N]ot all acts requiring a public employee to choose among alternatives entail the use of 'discretion' within the meaning of section 820.2." (*Barner v. Leeds* (2000) 24 Cal.4th 676, 684–685.) In determining whether an act is discretionary under section 820.2, our Supreme Court has "distinguished between the employee's operational and policy decisions." (*Barner*, at p. 685.) "[I]mmunity applies only to *deliberate and considered* policy decisions, in which a '[conscious] balancing [of] risks and advantages … took place. The fact that an employee normally engages in "discretionary activity" is irrelevant if, in a given case, the employee did not render a considered decision. [Citations].' " (*Caldwell*, *supra*, 10 Cal.4th at p. 981, quoting *Johnson v. State* (1968) 69 Cal.2d 782 (*Johnson*).) "On the other hand, … there is no basis for immunizing lower-level, or 'ministerial,' decisions that merely implement a basic policy already formulated." (*Caldwell*, at p. 981.)

**B.     Analysis**

Whether a public entity or employee has a duty to the plaintiff[7] is generally a

_____

[7]     A negligence cause of action requires showing the defendant:  (1) had a legal duty to the plaintiff, (2) breached that duty to the plaintiff, and (3) such breach was the

7.

threshold issue to determine before addressing immunity. (*Caldwell*, *supra*, 10 Cal.4th at p. 985.) The parties do not appear to dispute, and we assume for purposes of appeal, the County and its employees owed a duty to plaintiff. (*Id*. at p. 978, fn. 3 [the trial court may depart from the duty before immunity doctrine for expediency and judicial economy]; see also *Becerra v. County of Santa Cruz* (1998) 68 Cal.App.4th 1450, 1462 (*Becerra*) [duty of care by the county assumed for purposes of analyzing appellate claims].) The heart of the parties' dispute is whether the County's employees, and by extension the County itself, are entitled to discretionary act immunity.

Social workers have been found to be entitled to discretionary act immunity for a variety of decisions. Appellate courts have held that the investigation of child abuse, placement and removal of a child, instigation of dependency proceedings and processing adoptions are discretionary acts for which social workers are immune from liability. (See, e.g., *Christina C. v. County of Orange* (2013) 220 Cal.App.4th 1371, 1381; *Ortega v. Sacramento County Dept. of Health & Human Services* (2008) 161 Cal.App.4th 713, 729–731; *Jacqueline T. v. Alameda County Child Protective Services* (2007) 155 Cal.App.4th 456, 468 (*Jacqueline T.*); *Becerra*, *supra*, 68 Cal.App.4th at p. 1462; *Ronald S. v. County of San Diego* (1993) 16 Cal.App.4th 887, 897 (*Ronald S.*); *Alicia T. v. County of Los Angeles* (1990) 222 Cal.App.3d 869, 882–883 (*Alicia T.*).) Immunity "applies even to 'lousy' decisions in which the worker abuses his or her discretion, including decisions based on 'woefully inadequate information.' " (*Christina C.*, at p. 1381.) One court explained the rationale for immunizing social workers' placement and removal decisions: "The law does not grant immunity to social workers because it believes they are perfect, or should never be questioned or called to account for their actions. The law grants them immunity because otherwise they would simply not be able to do their jobs.

---

proximate or legal cause of injury to the plaintiff. (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917.)

If every time they removed a child, based on the information they had at the time, they had to fear a lawsuit if they were later proved wrong, the system would be paralyzed and children would be in danger.  Nor would we ever find qualified people willing to become social workers under such conditions." (*Gabrielle A. v. County of Orange* (2017) 10 Cal.App.5th 1268, 1287.)

Despite this body of case law, plaintiff argues acts and omissions in supervising foster care are operational or ministerial under Supreme Court precedent and appellate cases on derivative liability for public entities that conflict with Supreme Court precedent are invalid.  But our Supreme Court has observed with approval that the "Courts of Appeal have held that the decisions of child welfare agency employees—regarding determinations of child abuse, the potential risk to a child, placement of a child, removal of a child, and other resultant actions—are subjective *discretionary* ones that are incidental to the employees' investigations." (*B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 191–192.)  The Supreme Court cited several cases as examples including, as relevant here, *Alicia T.* and *Jacqueline T.*  Both *Alicia T.* and *Jacqueline T.* rejected arguments that a social worker's investigative decisionmaking into reports of child abuse is ministerial and not discretionary. (*Alicia T.*, *supra*, 222 Cal.App.3d at pp. 882–883; *Jacqueline T.*, *supra*, 155 Cal.App.4th at pp. 465–466.)

In *Alicia T.*, the county removed a child from her parents' custody based on two unqualified physicians' erroneous conclusion the child had been molested. (*Alicia T.*, *supra*, 222 Cal.App.3d at pp. 875–876.)  The parents sued the county for negligent investigation of the alleged molestation and removal of the child without sufficient evidence. (*Id*. at p. 876.)  The court of appeal was persuaded that a social worker's function in determining whether to investigate abuse and initiate dependency proceedings " 'is not very different from the responsibility of a criminal prosecutor.  The social worker must make a quick decision based on perhaps incomplete information as to whether to commence investigations and initiate proceedings against parents who may

9.

have abused their children.' " (*Id*. at p. 880.) The court reasoned that "termination of the social workers' immunity would chill the quasi-prosecutorial function of that office and diminish the protections available to minor children just as if the immunity had been withheld in the first instance." (*Id*. at p. 882.) Based on this reasoning, the court concluded "[i]t is necessary to protect social workers in their vital work from the harassment of civil suits and to prevent any dilution of the protection afforded minors by the dependency provisions of the Welfare and Institutions Code. Therefore, social workers must be absolutely immune from suits alleging the improper investigation of child abuse, removal of a minor from the parental home based upon suspicion of abuse and the instigation of dependency proceedings." (*Id*. at p. 881.)

In *Jacqueline T.*, the plaintiff mother sued the county for negligence related to the county's investigation of allegations plaintiff's two children were being sexually abused in their father's home. (*Jacqueline T.*, *supra*, 155 Cal.App.4th at pp. 460–462.) The court of appeal acknowledged that, under Supreme Court precedent, not "all actions by social workers involve policy or prosecutorial decisions falling within the scope of statutory immunity." (*Id*. at p. 467.) In assessing which actions are immune, the court found helpful *Newton v. County of Napa* (1990) 217 Cal.App.3d 1551, in which the county was found immune from liability for " ' "failing to properly, thoroughly and completely investigate the source and basis for the underlying [child abuse] complaint." ' [Citation.] Immunity did not extend, however, 'beyond actions implied in the decision to investigate' to 'gratuitous actions, unnecessary for a proper investigation.' [Citation.] The county was thus not immune for such gratuitous actions as causing the minors to disrobe and stand naked in the presence of strangers and failing to seek or receive voluntary consent to disrobe them." (*Jacqueline T.*, at pp. 467−468.) Because the plaintiff in *Jacqueline T.* made no allegations the county's employees engaged in gratuitous actions unnecessary for a proper investigation, the court concluded "the alleged acts and omissions of which Jacqueline T. complains—including the failure to

10.

conduct a reasonable and diligent investigation and to timely cross-report to other agencies—were incidental to [e]mployees' investigation, within the scope of their employment, of reports of possible abuse [to the children], and [e]mployees subsequent conclusion that such reports did not warrant initiation of dependency proceedings." (*Id.* at p. 468.)

We find the reasoning of *Alicia T.* and *Jacqueline T.* persuasive and applicable to the facts here. Like in those cases, plaintiff faults the County's social worker for negligent investigation into her report of sexual abuse by her foster father. Based on established case law, the County's employees are immune from liability for failure to properly investigate plaintiff's report of sexual abuse.

Plaintiff argues *Jacqueline T.* is distinguishable from the instant case because *Jacqueline T.* involved investigation of abuse and removal of a child from the natural parents' home, not preventing harm to a foster child in the defendant's custody. However, public employees have been found to be immune from liability for foster care supervision and placement decisions. In *Becerra*, the plaintiff mother raised concerns her daughter was not being adequately supervised while in foster care, and the daughter was later found murdered at school. (*Becerra*, *supra*, 68 Cal.App.4th at p. 1455.) In determining if the daughter's foster home placement was a discretionary decision for which the county and its employees were immune under section 820.2, the *Becerra* court considered the analysis in *Thompson v. County of Alameda* (1980) 27 Cal.3d 741 and *Ronald S.* (*Becerra*, at pp. 1462–1463.) Our Supreme Court held in *Thompson* that the selection of a custodian for a juvenile offender was a discretionary act entitled to immunity under section 820.2, reasoning that "[c]hoosing a proper custodian to direct the attempted rehabilitation of a minor with a prior history of antisocial behavior is a complex task.… The determination involves a careful consideration and balancing of such factors as the protection of the public, the physical and psychological needs of the minor, the relative suitability of the home environment, the availability of other resources

11.

such as halfway houses and community centers, and the need to reintegrate the minor into the community. The decision, requiring as it does, comparisons, choices, judgments, and evaluations, comprises the very essence of the exercise of 'discretion' and … such decisions are immunized under section 820.2." (*Thompson*, at pp. 748–749.) The court of appeal in *Ronald S.* similarly found the county was immune from liability for selecting an adoptive home in which the child was abused because the "nature of the investigation to be conducted and the ultimate determination of suitability of adoptive parents bear the hallmarks of uniquely discretionary activity.… There is no way that the following of forms or rules or agency procedures could transmute this most subjective decisionmaking process into a ministerial act." (*Ronald S.*, *supra*, 16 Cal.App.4th at p. 897.) Relying on *Thompson* and *Ronald S.* to conclude the county was immune from liability for its foster home placement decision, the *Becerra* court reasoned that "the choice of a foster home for a dependent child is a complex task requiring the consideration and balancing of many factors to achieve statutory objectives." (*Becerra*, at p. 1464.) The court was unpersuaded the county's decision about "the intervention and change in placement" was "any less 'discretionary' for purposes of the immunity of … section 820.2 than the original placement decision[.] [¶] Like the adoption placement decision in [*Ronald S.*], it bears the hallmarks of uniquely discretionary activity." (*Becerra*, at p. 1466.)

While plaintiff argues preventing foreseeable harm and keeping a child safe in a foster home are part of a public employee's "ministerial duty," deciding whether to intervene in a child's placement necessarily involves the exercise of discretion. As explained in *Becerra*, "[e]ven if some activities in monitoring a placement might be considered ministerial …, the ultimate decision about … whether to intervene and discontinue a child's placement, is a discretionary placement decision."[8] (*Becerra*,

_____

[8] We reject plaintiff's assertion that *Becerra* is a "questionable decision" because the court purportedly did not engage in the required analysis under *Johnson*, *supra*, 69 Cal.2d 782, the first Supreme Court case to address section 820.2. As discussed herein,

12.

*supra*, 68 Cal.App.4th at p. 1466; *B.H. v. County of San Bernardino*, *supra*, 62 Cal.4th at p. 195 ["Courts of Appeal have held that preliminary determinations of the potential risk to the child and the necessity of intervention made by employees of child protective agencies based on their investigative findings are not ministerial duties; these decisions are subjective, 'involve a formidable amount of discretion' and are entitled to immunity"].) Since the gravamen of plaintiff's allegations is that the County's employee was negligent for failing to intervene in plaintiff's foster care placement in response to her report of abuse, discretionary immunity applies.

Plaintiff urges us to follow *Elton v. County of Orange* (1970) 3 Cal.App.3d 1053, in which the court of appeal concluded that decisions about the maintenance, care, or placement of a child "do not achieve the level of basic policy decisions" and are not immune from liability under section 820.2. (*Id*. at p. 1058.) We agree with the *Becerra* court that *Elton* has limited, if any, precedential value because *Elton* was decided before the adoption of statutes requiring social workers exercise discretion and was persuasively distinguished in *Ronald S.* (*Becerra*, *supra*, 68 Cal.App.4th at p. 1464.) Specifically, the *Ronald S.* court characterized *Elton* as a "difficult decision" and explained: "Selecting and certifying a foster home for care of dependent children seems to us to be an activity loaded with subjective determinations and fraught with major possibilities of an erroneous decision. It appears to us that foster home placement, like adoption placement, constitutes an activity of a co-equal branch of government, and that the discretionary decisions made in connection therewith should be deemed beyond the proper scope of court review." (*Ronald S.*, *supra*, 16 Cal.App.4th at p. 898.)[9]

*Becerra* reflects a thorough analysis and application of precedential case law regarding section 820.2. (*Becerra*, *supra*, 68 Cal.App.4th at pp. 1462–1466.)

[9]      Plaintiff spends a significant portion of her briefing focused on whether *County of Los Angeles v. Superior Court* (*Terrell R.*) (2002) 102 Cal.App.4th 627 is consistent with Supreme Court precedent interpreting discretionary act immunity. We need not and do

Plaintiff argues the SAC does not allege the County's employee made any policy judgment or choice to leave her in the Browns' home and to take no immediate corrective action to protect plaintiff from further abuse by D.B. Plaintiff contends the County's demurrer cannot be sustained on a theory of discretionary act immunity where nothing in the SAC indicates the County's employee made a considered or policy decision.[10]

A demurrer may be sustained based on an affirmative defense, like discretionary act immunity, " ' "where the face of the complaint discloses that the action is necessarily barred by the defense." ' " (*McKenney v. Purepac Pharmaceutical Co.* (2008) 167 Cal.App.4th 72, 79; accord, *Heshejin v. Rostami* (2020) 54 Cal.App.5th 984, 992; see e.g., *Caldwell*, *supra*, 10 Cal.4th at pp. 983−984 [demurrer properly sustained based on a fair reading of the complaint that the cause of action was barred as a matter of law by discretionary act immunity]; *Aryeh v. Cannon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191 [application of the statute of limitations on facts alleged in complaint determined on demurrer].) Accordingly, "[w]hether immunity forecloses suit is properly raised by demurrer." (*Mahler v. Judicial Council of California* (2021) 67 Cal.App.5th 82, 100, fn. 8.) A finding of immunity is precluded "solely on grounds that 'the [affected] employee's *general course of duties* is "discretionary" …' [citation], and [instead] requires a showing that 'the specific conduct giving rise to the suit' involved an *actual* exercise of discretion, i.e., a '[conscious] balancing [of] risks and advantages.' "

---

not rely on *Terrell R.* given the other case law supporting our disposition, and therefore do not address whether *Terrell R.* conflicts with binding precedent.

**10**    Plaintiff primarily relies on the following footnote in *Johnson*: "Immunity for 'discretionary' activities serves no purpose except to assure that courts refuse to pass judgment on policy decisions in the province of coordinate branches of government. Accordingly, to be entitled to immunity the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place. The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision." (*Johnson*, *supra*, 69 Cal.2d at p. 795, fn. 8.)

(*Caldwell*, at p. 983.)  Our Supreme Court has explained though that "a *strictly careful, thorough, formal, or correct* evaluation" is not required (*ibid*.) and that "[s]uch a standard would swallow an immunity designed to protect against claims of carelessness, malice, bad judgment, or abuse of discretion in the formulation of policy" (*id*. at pp. 983–984). Claims of improper evaluation by the social worker cannot divest a discretionary policy decision of its immunity.  (*Id*. at p. 984; *Ortega v. Sacramento County Dept. of Health & Human Services*, *supra*, 161 Cal.App.4th at p. 733 ["the collection and evaluation of information is an integral part of 'the exercise of discretion' immunized by section 820.2"].)

## DISPOSITION

The judgment is affirmed.  The County to recover their costs on appeal.