Filed 9/20/24  R.S. v. Orange County Social Services Agency CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| R.S., | |
| Plaintiff and Appellant, | G063041 |
| v. | (Super. Ct. No. 30-2021-01183062) |
| ORANGE COUNTY SOCIAL SERVICES AGENCY et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, David J. Hesseltine, Judge. Reversed.

Herman Law and Blake J. Woodhall for Plaintiff and Appellant.

Koeller, Nebeker, Carlson & Haluck, Zachary M. Schwartz, Amanda B. Peterson and Kiran S. Idrees for Defendants and Respondents.

Plaintiff was about eight years old when he was placed into foster care in the home of Howard Graubner and his wife Ann Graubner.[1] Throughout the next seven years, Howard repeatedly sexually abused R.S. until R.S. was returned to the care of his biological mother. After the California Legislature extended the statute of limitations for childhood sexual abuse, R.S. sued the Orange County Social Services Agency and the County of Orange (collectively, the County) for negligence in failing to protect him from Howard's criminal conduct. The trial court granted the County's motion for summary judgment, finding the County was immune from liability pursuant to Government Code sections 815.2 and 820.2 because R.S.'s claims were based on the discretionary acts of the County's social worker employees in not removing him from the Graubners' home. The court also found the County did not have a legal duty to protect R.S. from Howard's conduct because it was unforeseeable.

We reverse. The County failed to meet its initial burden of proving it has immunity for the acts or omissions of its employees in this case. We agree that, like a social worker's act of placing a child in a particular foster home, the act of removing—or choosing not to remove—a child from an existing placement is a discretionary act. However, the County failed to show that its employees actually exercised any discretion by making a considered decision to leave R.S. in the Graubners' care after R.S. complained to a social worker that he felt "weird" and "yucky" showering with his foster father. Accordingly, the trial court erred in granting the County summary judgment

---

[1] We refer to Howard and Ann by their first names for ease of reference and to avoid confusion. We refer to Howard and Ann collectively as the Graubners.

on the ground that it has discretionary immunity for the acts or omissions of its employees.

The trial court also erred in finding no legal duty because it applied the wrong analysis. Whether a defendant owes a duty to protect a plaintiff against a third party is governed by a two-step inquiry. (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 209 (*Brown*).) First, the court determines whether a special relationship exists between the plaintiff and the defendant that gives rise to a duty to protect. In the case of a foster child and the governmental agency that placed that child in a foster home, such a special relationship unquestionably exists. Second, the court considers whether the relevant public policy considerations require an exception to that duty. (See *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*).) Here, the trial court did not properly analyze and apply the *Rowland* factors; the appellate record shows no basis on which we could conclude as a matter of law the County should be relieved of its legal duty to R.S.

FACTUAL AND PROCEDURAL BACKGROUND

In 1970, R.S. was placed in foster care in the Graubners' home. At the time, R.S. was about eight years old. The Graubners were licensed foster parents.[2] Neither Howard nor Ann had any criminal history and neither had ever been accused of sexual abuse of a minor. R.S. lived in the Graubners' home until 1976 or 1977, when he was returned to the custody of his biological mother.

Howard sexually molested and abused R.S. frequently, repeatedly, and persistently throughout the time R.S. was placed with the

---

[2] At the time the Graubners were licensed, licensure decisions were made by the California Department of Social Services, not the County. The Graubners' licensure is not at issue in this appeal.

3

Graubners. When R.S. was about nine years old, he told social worker Barbara Voss, "he did not like taking showers with foster father, Howard Graubner. Plaintiff told Barbara Voss, 'I feel really weird taking a shower with dad'. He remembers saying 'it was yucky'." According to R.S., Voss said something to him "that made me feel like it was going to be okay. [¶] . . . [¶] . . . I don't remember what her response was, but I remember how I felt. I remember feeling a little bit of relief, like she heard me; like she was going to make it better; that she was gonna do something about that; so I wouldn't have to go through that again. I don't remember the words, but I remember how I felt." The County does not appear to have taken any investigative or corrective action in response to R.S.'s statements to Voss.[3] It did not remove R.S. from the Graubners' home as a result of R.S.'s report to Voss.

In 1986, the County investigated allegations that Howard had sexually molested children in his home. In 2019, Howard admitted in writing to sexually abusing R.S., as well as his four biological sons.

In 2021, R.S. sued the County for negligence.[4] R.S.'s amended complaint alleges the County's employees breached their duty to R.S. by failing to protect him from sexual abuse, failing to prevent foreseeable sexual abuse, failing to exercise reasonable oversight, and failing to institute

---

[3] According to the County, no records relating to R.S., his dependency proceedings, or his foster care placement are still in existence. The County further states that it has been unable to locate Voss and she may be deceased.

[4] Effective January 1, 2020, Code of Civil Procedure section 340.1 was amended to extend the limitations period for a claim for damages due to childhood sexual assault. (Stats. 2019, ch. 861, § 1.)

4

corrective measures. The complaint also alleges the County knew or reasonably should have known of the danger posed to R.S., but failed to act on that knowledge.

The County filed a motion for summary judgment, R.S. filed opposition, and the trial court conducted a hearing. The court granted the motion for summary judgment and entered judgment in favor of the County and against R.S.[5] R.S. filed a timely notice of appeal.

DISCUSSION

I.

STANDARD OF REVIEW

We review an order granting summary judgment de novo. (*Hedayati v. Interinsurance Exchange of the Automobile Club* (2021) 67 Cal.App.5th 833, 843.) We view the evidence in the light most favorable to the nonmoving party, liberally construing that party's evidence and strictly scrutinizing the moving party's evidence. (*Ibid.*) We resolve any evidentiary doubts or ambiguities in favor of the nonmoving party. (*Ibid.*)

In a motion for summary judgment, the moving defendant must show the plaintiff cannot establish one or more of the elements of the cause of action or that there is a complete defense to the cause of action. (*Montes v. Young Men's Christian Assn. of Glendale, California* (2022) 81 Cal.App.5th 1134, 1139.) If the moving defendant makes that initial showing, the burden shifts to plaintiff to show through admissible evidence that triable issues of fact exist. (*Estuary Owners Assn. v. Shell Oil Co.* (2017) 13 Cal.App.5th 899, 911.)

---

[5] R.S.'s request for a continuance of the hearing on the motion for summary judgment was denied. (Code Civ. Proc., § 437c, subd. (h).) R.S. does not challenge this ruling on appeal.

## II.

### THE COUNTY FAILED TO ESTABLISH IT IS ENTITLED TO IMMUNITY

A public entity is only liable for injuries caused by the acts or omissions of its employees within the scope of their employment. (Gov. Code, § 815.2, subd. (a).)[6] The public entity cannot be liable when the employee's act or omission results from an exercise of discretion vested in the employee. (*Id.*, §§ 815.2, subd. (b), 820.2.) Discretionary immunity is an affirmative defense. (*Zuniga v. Housing Authority* (1995) 41 Cal.App.4th 82, 98–99.) The parties disagree as to whether the failure to remove R.S. from the Graubners' home was a discretionary act (for which there would be immunity) or an operational or ministerial act (for which there would not).

"Where there is negligence . . . liability for resulting harm is the rule, and immunity is the exception. [Citations.] Accordingly, particular immunities have been strictly construed to apply only to the functions which the statute or common law rule creating each immunity was intended to protect; immunities have not been applied to other activities, whether or not the person claiming immunity sometimes, or even ordinarily, fulfills the protected functions." (*Scott v. County of Los Angeles* (1994) 27 Cal.App.4th 125, 144 (*Scott*).)

---

[6] In the amended complaint, R.S. alleged the County was liable based on Government Code sections 815.4 (liability due to acts or omissions of independent contractor) and 815.6 (failure to discharge statutory duty) as well as section 815.2. On summary judgment, the County offered evidence of undisputed material facts that (1) Graubner was not an independent contractor of the County, and (2) no mandatory statutory duty applied in this case. The trial court specifically found the County was not liable under section 815.6. On appeal, R.S. does not argue the County was liable under either section 815.4 or 815.6.

6

*A. Immunity for Discretionary, Not Ministerial, Acts and Omissions*

In *Johnson v. State of California* (1968) 69 Cal.2d 782 (*Johnson*), the California Supreme Court addressed whether a governmental agency's employees' acts or omissions are discretionary, in which case they are entitled to immunity, or ministerial, in which case they are not: "In drawing the line between the immune 'discretionary' decision and the unprotected ministerial act we recognize both the difficulty and the limited function of such distinction. As we said in *Lipman v. Brisbane Elementary Sch. Dist.* [1961] 55 Cal.2d 224, 230, 'it may not be possible to set forth a definite rule which would determine in every instance whether a governmental agency is liable.' A workable definition nevertheless will be one that recognizes that '[m]uch of what is done by officers and employees of the government must remain beyond the range of judicial inquiry' [citation]; obviously 'it is not a tort for government to govern' [citation]. Courts and commentators have therefore centered their attention on an assurance of judicial abstention in areas in which the responsibility for *basic policy decisions* has been committed to coordinate branches of government. Any wider judicial review, we believe, would place the court in the unseemly position of determining the propriety of decisions expressly entrusted to a coordinate branch of government. Moreover, the potentiality of such review might even in the first instance affect the coordinate body's decision-making process." (*Id.* at p. 793.)

The *Johnson* court set forth a two-part test to establish whether discretionary immunity applies. First, the agency must show the act or omission is discretionary. The court held the distinction between "'planning'" decisions and "'operational'" decisions determines whether immunity applies. (*Johnson, supra*, 69 Cal.2d at p. 794.) "It requires us to find and isolate those areas of quasi-legislative policy-making which are sufficiently sensitive to

7

justify a blanket rule that courts will not entertain a tort action alleging that careless conduct contributed to the governmental decision." (*Ibid.*)

Second, the agency must show the employee in question "actually reached a considered decision knowingly and deliberately encountering the risks that give rise to plaintiff's complaint. . . . [¶] . . . [T]o be entitled to immunity the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place. The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision." (*Johnson, supra*, 69 Cal.2d at pp. 794–795, fn. 8; see Gov. Code, § 820.2 [public employees not liable for injuries resulting from their acts and omissions that are "the result of the exercise of the discretion vested in [them]"].)

Several decades later, in *Caldwell v. Montoya* (1995) 10 Cal.4th 972 (*Caldwell*), the California Supreme Court again addressed agency immunity, concluding that a school district's decision to terminate the employment of the district superintendent "particularly satisfies the immunity justifications set forth in *Johnson*." (*Id.* at p. 982.) Applying the two-part *Johnson* test, the *Caldwell* court concluded: "*Johnson* precludes a finding of immunity solely on grounds that 'the [affected] employee's *general course of duties* is "discretionary" . . .' [citation], and requires a showing that 'the specific conduct giving rise to the suit' involved an *actual* exercise of discretion, i.e., a '[conscious] balancing [of] risks and advantages' [citation]." (*Id.* at p. 983.) The court emphasized, however, that "*Johnson* does not require a *strictly careful, thorough, formal, or correct* evaluation. Such a standard would swallow an immunity designed to protect against claims of carelessness, malice, bad judgment, or abuse of discretion in the formulation of policy. [Citation.] A fair reading of the instant complaint reveals

8

allegations that the Board made an *actual, conscious, and considered* collective policy decision to replace plaintiff as superintendent. The complaint admits of no theory that the Board acted unconsciously or failed to weigh pros and cons. On the contrary, it asserts that Board members *did* purposefully employ standards they deemed relevant, but that the standards employed were wrong and impermissible. For reasons already stated, claims of *improper* evaluation cannot divest a discretionary policy decision of its immunity." (*Id.* at pp. 983–984.)

B.  *Application of the* Johnson *Test to the County's Motion for Summary Judgment*

1.  Child Foster Placements and Removal Decisions are Discretionary

Applying the first prong of the *Johnson* test to the County's motion here, we consider whether a social worker's decision to remove (or not remove) a child from a foster placement is a ministerial or a discretionary act. We conclude it is discretionary.

As the California Supreme Court recognized in *B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, numerous Courts of Appeal have held that "decisions of child welfare agency employees—regarding determinations of child abuse, the potential risk to a child, placement of a child, removal of a child, and other resultant actions—are subjective *discretionary* ones that are incidental to the employees' investigations." (*Id.* at pp. 191–192; see *Christina C. v. County of Orange* (2013) 220 Cal.App.4th 1371, 1381 [under Government Code section 820.2 social workers in child welfare matters are entitled to immunity for child removal and placement decisions, even for "'lousy' decisions in which the worker abuses his or her discretion, including decisions based on 'woefully inadequate information'"]; *Ortega v. Sacramento*

9

*County Dept. of Health & Human Services* (2008) 161 Cal.App.4th 713, 730–733 [social worker's failure to gather pertinent facts before returning child to custody of parent who then stabbed her was subject to immunity under section 820.2 because "the collection and evaluation of information is an integral part of 'the exercise of the discretion' immunized by section 820.2"]; *Jacqueline T. v. Alameda County Child Protective Services* (2007) 155 Cal.App.4th 456, 466 ["a social worker's decisions relating to, as here, the investigation of child abuse, removal of a minor, and instigation of dependency proceedings, are discretionary decisions subject to immunity under section 820.2"]; *Becerra v. County of Santa Cruz* (1998) 68 Cal.App.4th 1450, 1466 (*Becerra*) ["Even if some activities in monitoring a placement might be considered ministerial . . . the ultimate decision . . . whether to intervene and discontinue a child's placement, is a discretionary placement decision"].)

We find no reason to depart from those decisions. Decisions to remove a child from his or her original home, to return a child to his or her parent's custody, or to place a child with a foster family or adoptive family are all discretionary acts. Similarly, we conclude the determination whether to remove a child from a foster family placement is also discretionary; it requires the same type of discretionary decisionmaking as the placement of the child with the family in the first instance.

R.S. agrees his initial placement in the foster home was a discretionary act but argues that "once the child has been taken into governmental custody for purposes of foster care, decisions made in the course of the foster care agency's operational duties concerning the child's safety, care and welfare 'implement' a policy and thus are subject to liability if performed negligently." R.S. cites *Elton v. County of Orange* (1970)

10

3 Cal.App.3d 1053 (*Elton*) and *Scott, supra*, 27 Cal.App.4th 125, as support for his argument. Both cases are distinguishable.

In *Elton, supra*, 3 Cal.App.3d 1053, the appellate court held that "[d]ecisions made with respect to the maintenance, care or supervision of plaintiff, as a dependent child, or in connection with her placement in a particular home, may entail the exercise of discretion in a literal sense, but such determinations do not achieve the level of basic policy decisions, and thus do not, under the provisions of Government Code section 820.2, preclude judicial inquiry into whether negligence of public employees was involved and whether such negligence caused or contributed to plaintiff's injuries." (*Id.* at p. 1058.) *Elton* has been distinguished, however, because it was decided on demurrer, rather than at the summary judgment stage, and because it was decided before the law was changed to require social workers to engage in discretionary analysis of the needs of dependent children. (See *Becerra, supra*, 68 Cal.App.4th at p. 1464.)

Moreover, in *Ronald S. v. County of San Diego* (1993) 16 Cal.App.4th 887, the same court that decided *Elton* later distinguished the holding of that case: "We find *Elton* to be a difficult decision. Selecting and certifying a foster home for care of dependent children seems to us to be an activity loaded with subjective determinations and fraught with major possibilities of an erroneous decision. It appears to us that foster home placement, like adoption placement, constitutes an activity of a co-equal branch of government, and that the discretionary decisions made in connection therewith should be deemed beyond the proper scope of court review. However, we need not (and do not) attempt a disapproval or retreat from our court's decision in *Elton*. *Elton* can be distinguished. [¶] The maintenance of a child in a foster home involves an obligation of continued

11

supervision by the County. The child remains a ward of the County. Much of what the County is obligated to do in terms of continued administration of the child's welfare undoubtedly constitutes simple and uncomplicated surveillance which reasonably could be characterized as ministerial. It is understandable, then, that a complaint which in general terms alleges damage from negligent management and supervision of the foster home could be deemed adequate to withstand a general demurrer." (*Ronald S. v. County of San Diego, supra*, 16 Cal.App.4th at p. 898.)

The present case differs from *Elton* because here R.S. alleges he directly provided information to Voss that should have caused Voss and/or the County to undertake a review of the propriety of R.S.'s placement. This is markedly different from an alleged failure to perform routine checks required as a matter of course by social workers.

*Scott* is similarly distinguishable. In that case, the court held a social worker who failed to make required monthly home visits could be held liable for negligent supervision of a foster child. The "actual delivery of public social services, such as foster care, to abused, neglected or exploited children" are actions governed by specific statutory or regulatory directives "which leave the officer no choice" and are therefore not immunized by section 820.2. (*Scott, supra,* 27 Cal.App.4th at pp. 143, 141.) *Scott* differs from our case because the negligent act in that case—failure to make required monthly home visits—clearly falls within the category of non-immune ministerial acts.

2. The County Failed to Show it Made a Considered Decision Not to Remove R.S. From the Graubners' Care

Although we have determined the trial court properly found that a decision not to change R.S.'s foster placement is a discretionary act, that does not end our inquiry. Under *Johnson* and *Caldwell*, we also must

12

consider whether the County made the necessary showing that Voss (or any other County employee) actually exercised the discretion vested in them by making a considered decision regarding R.S.'s placement with the Graubners after R.S. told Voss about showering with Howard.[7] We conclude it did not.

The County failed to provide any facts showing whether Voss (or any other County employee) made a considered decision with respect to maintaining R.S.'s placement in the Graubners' home. Instead, the County's separate statement in support of the motion for summary judgment asserts "[t]here no longer exists any Juvenile Court or Social Service Agency records relating to [R.S.], his dependency proceedings, or foster care placement."[8] But the lack of evidence to respond does not mean that the second part of the *Johnson* test can be ignored. We therefore conclude the County failed to meet its initial burden on summary judgment to shift the burden to R.S. (See *Caldwell, supra,* 10 Cal.4th at p. 984 [complaint alleged school district board "made an *actual, conscious, and considered* collective policy decision"];

---

[7] At oral argument, counsel for the County argued the California Supreme Court has called *Johnson* into doubt, or at least limited the second prong of the *Johnson* test, citing *Thompson v. County of Alameda* (1980) 27 Cal.3d 741. *Thompson* did no such thing. *Thompson* did not address the second prong of the *Johnson* test, much less weaken or dispense with it. Moreover, as noted above, in *Caldwell*—15 years after *Thompson*—the California Supreme Court reiterated that an agency seeking immunity under Government Code section 820.2 must make "a showing that 'the specific conduct giving rise to the suit' involved an *actual* exercise of discretion, i.e., a '[conscious] balancing [of] risks and advantages' [citation]." (*Caldwell, supra,* 10 Cal.4th at p. 983.)

[8] In its minute order granting the motion for summary judgment, the trial court noted: "[T]here is no evidence to show what Plaintiff's social worker either did or failed to do in supervising Plaintiff's foster placement and responding to Plaintiff's single statement regarding the shower."

13

*Christina C. v. County of Orange, supra*, 220 Cal.App.4th at p. 1381 ["assuming arguendo SSA abused its discretion by acting in an arrogant or punitive manner or with undue consideration for monitoring costs, the immunity provided in Government Code section 820.2 expressly applies 'whether or not such discretion is abused'"]; *Ortega v. Sacramento County Dept. of Health & Human Services, supra*, 161 Cal.App.4th at p. 733 [social worker "made a considered decision balancing risks and advantages [although] on woefully inadequate information"]; *Becerra, supra,* 68 Cal.App.4th at p. 1464 ["social workers evaluated numerous subjective factors in determining what they believed to be the appropriate placement for Mariana"].)

We recognize that, given the length of time that passed between the acts in question and the filing of R.S.'s complaint, it may be difficult—perhaps impossible—to produce evidence of this element necessary to the determination of immunity under Government Code section 820.2. But that is a problem addressed to the Legislature, not this court. And in fact, the issue *was* raised with the Legislature before the limitations period was extended. The legislative history for Assembly Bill No. 218 (2019-2020 Reg. Sess.), which amended Code of Civil Procedure section 340.1 to extend the limitations period for a claim of childhood sexual assault, shows the Legislature was well aware that the extension of the limitations period could negatively affect agencies' ability to defend against such cases. For example, the Assembly Judiciary Committee's analysis of the bill notes: "The bill is opposed (unless amended) by the public and private school officials, insurance associations, and joint powers associations. All of the opponents raise the same basic concerns: *it is very difficult to defend against old claims when records and witnesses may be unavailable*, insurance may no longer be

14

available, and the cost of defending these actions could be astronomical and could prevent the impacted entities from being able to support their main work." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 218 (2019-2020 Reg. Sess.), italics added.) In short, the Legislature has already made the policy decision that the importance of providing redress to victims of childhood sexual abuse outweighs the potential difficulties inherent in defending against decades-old claims. We are not free to substitute our judgment on that point or to depart from the California Supreme Court's holdings in *Johnson* and *Caldwell*.

III.

THE COUNTY FAILED TO ESTABLISH IT HAD NO LEGAL DUTY TO PROTECT R.S.

"To establish a cause of action for negligence, the plaintiff must show that the 'defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury.' [Citation.] Recovery for negligence depends as a threshold matter on the existence of a legal duty of care." (*Brown, supra*, 11 Cal.5th at p. 213.) The existence and scope of a duty is a question of law for the court. (*Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 237.)

*A. The County Had a Special Relationship with R.S.*

Generally, a defendant does not owe a legal duty to protect a plaintiff against the conduct of a third party. (*Delgado v. Trax Bar & Grill, supra*, 36 Cal.4th at p. 235.) In *Brown*, the California Supreme Court "clarif[ied] that whether to recognize a duty to protect is governed by a two-step inquiry. First, the court must determine whether there exists a special relationship between the parties or some other set of circumstances giving rise to an affirmative duty to protect. Second, if so, the court must consult the factors described in *Rowland* to determine whether relevant policy

15

considerations counsel limiting that duty." (*Brown, supra*, 11 Cal.5th at p. 209.)

"A special relationship between the defendant and the victim is one that 'gives the victim a right to expect' protection from the defendant . . . . [Citation.] Relationships between parents and children, colleges and students, employers and employees, common carriers and passengers, and innkeepers and guests, are all examples of special relationships that give rise to an affirmative duty to protect. [Citations.] The existence of such a special relationship puts the defendant in a unique position to protect the plaintiff from injury. The law requires the defendant to use this position accordingly." (*Brown, supra*, 11 Cal.5th at p. 216.) "'California courts have frequently recognized special relationships between children and their adult caregivers that give rise to a duty to prevent harms caused by the intentional or criminal conduct of third parties.'" (*Doe v. United States Youth Soccer Assn., Inc.* (2017) 8 Cal.App.5th 1118, 1129.)

As the trial court noted, there is no serious dispute in this case that a special relationship existed between the County and R.S., and that the County therefore owed R.S. a duty of care to protect him from harm by third parties. We agree that a special relationship existed between R.S. and the County, which removed him from his home and placed him in a foster home for six or seven years. That special relationship gave rise to a legal duty to protect R.S. from injuries caused by the criminal conduct of the foster father, a third party. (*Brown, supra*, 11 Cal.5th at p. 209.)

B. *The* Rowland *Factors*

We next consider whether the factors set forth in *Rowland* require us to create an exception to that duty. "A departure from this fundamental principle [that a person is liable for injuries caused by his

16

failure to exercise reasonable care in the circumstances] involves the balancing of a number of considerations; the major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland, supra*, 69 Cal.2d at pp. 112–113.) As the party moving for summary judgment, the County bears the burden of showing the *Rowland* factors support an exception to the duty of care. (*Doe v. Roman Catholic Archbishop of Los Angeles* (2021) 70 Cal.App.5th 657, 675 (*Los Angeles*).) We conclude it did not bear that burden.

1. Foreseeability

The only factor the County addressed on summary judgment—and therefore the only factor the trial court considered—was foreseeability. The court concluded R.S.'s statement to Voss about showering with his foster father was not sufficient to establish the County had "actual knowledge that would make the conduct by [R.S.]'s foster father foreseeable." The court thus found the County had met its initial burden to show it had no legal duty to R.S., and R.S. failed to produce any admissible evidence to create a triable issue of material fact.

The trial court's analysis was incorrect. As the California Supreme Court explained in *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607 (*Regents*): "In examining foreseeability, 'the court's task . . . "is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather

17

to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed.""" (*Id*. at p. 629.) Neither the County nor R.S. addressed whether the category of negligent conduct by the County alleged here (failure to investigate child molestation by a foster parent when presented with a comment by a foster child raising the specter of potential sexual abuse) is sufficiently likely to result in the kind of harm R.S. experienced (continued sexual molestation) that liability may appropriately be imposed on the County. (See *Los Angeles, supra*, 70 Cal.App.5th at p. 676 [evidence of Archdiocese's awareness by the late 1980's of accusations of sexual abuse by priests created reasonable foreseeability that minors attending catechism classes might be molested by a priest, even without knowledge of a particular priest's prior sexual misconduct]; *Doe v. United States Youth Soccer Assn., Inc., supra*, 8 Cal.App.5th at p. 1133 [awareness of incidents of physical and sexual abuse within organization, and development of program to make players aware pedophiles were drawn to youth activities, made sexual abuse of players by their coaches reasonably foreseeable].)

The County cites numerous pre-*Regents* cases for the proposition that it must have had *actual* knowledge of Howard's criminal conduct to justify imposing a duty to protect R.S. But the California Supreme Court rejected that very argument: "[C]ase-specific foreseeability questions are relevant in determining the applicable standard of care or breach in a particular case. They do not, however, inform our threshold determination that a duty exists." (*Regents, supra*, 4 Cal.5th at p. 630.) The cases cited by the County analyze the question of duty in the context of foreseeability of the harm caused by a particular tortfeasor. (See *J.L. v. Children's Institute, Inc.* (2009) 177 Cal.App.4th 388, 391, 393, 396; *Margaret W. v. Kelley R.* (2006)

18

139 Cal.App.4th 141, 152; *Romero v. Superior Court* (2001) 89 Cal.App.4th 1068, 1080–1081, 1089; *Chaney v. Superior Court* (1995) 39 Cal.App.4th 152, 157.) We believe, however, that under *Rowland* the court must consider whether it was foreseeable that the category of negligent conduct was likely to result in the type of harm experienced. When analyzed in this way, we conclude it is sufficiently foreseeable that a failure by the County to take action (at a minimum, in the form of further inquiry or investigation) when a foster child makes comments to a social worker that are suggestive of sexual abuse is sufficiently likely to result in the harm R.S. experienced (continued sexual abuse) to make it appropriate to impose a duty on the County to protect against the harm R.S. suffered.

2. Other *Rowland* Factors

Although the trial court did not address the remaining *Rowland* factors, we review them to decide whether we can say, as a matter of law, they require creating an exception to the County's duty to R.S.

*Certainty*. "The second factor, 'the degree of *certainty* that the plaintiff suffered injury' [citation], may come into play when the plaintiff's claim involves intangible harm, such as emotional distress." (*Regents, supra*, 4 Cal.5th at p. 630.) R.S. alleged he suffered physical, psychological, and emotional injuries due to sexual abuse by Howard. "The significant emotional trauma caused by childhood sexual abuse . . . is well documented . . . ." (*Juarez v. Boy Scouts of America, Inc.* 81 Cal.App.4th 377, 405.)

*Connection between defendant's conduct and plaintiff's injury.* "Generally speaking, where the injury suffered is connected only distantly and indirectly to the defendant's negligent act, the risk of that type of injury from the category of negligent conduct at issue is likely to be deemed unforeseeable. Conversely, a closely connected type of injury is likely to be

deemed foreseeable." (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 779.) R.S. alleged (among other things) the County failed to protect him from sexual abuse, failed to properly investigate whether he was safe in his foster care placement, failed to establish and/or implement policies and procedures to protect children in foster care from sexual abuse, failed to adequately supervise and monitor him, and failed to adequately hire and train employees, including case workers. Howard's conduct was the immediate cause of R.S.'s injuries, but "the existence of an intervening act does not necessarily attenuate a defendant's negligence. Rather, 'the touchstone of the analysis is the foreseeability of that intervening conduct.'" (*Regents, supra*, 4 Cal.5th at p. 631.) As noted above, the County's motion for summary judgment did not address foreseeability under the proper standard. Moreover, no evidence was presented to the trial court regarding the general foreseeability of sexual abuse of children in foster care and none appears in the appellate record.

*Moral blame.*[9] Moral blame may be considered in "'instances where the plaintiffs are particularly powerless or unsophisticated compared to the defendants or where the defendants exercised greater control over the risks at issue.'" (*Regents, supra*, 4 Cal.5th at p. 631.) Minors in the foster care system, especially at R.S.'s then-tender age, are unquestionably less powerful and sophisticated compared to the social services agency that removed them from their parents' custody and placed them with a foster family. R.S. had no

_____

[9] The remaining factors are public policy factors. "'A duty of care will not be held to exist even as to foreseeable injuries . . . where the social utility of the activity concerned is so great, and avoidance of the injuries so burdensome to society, as to outweigh the compensatory and cost-internalization values of negligence liability.'" (*Regents, supra*, 4 Cal.5th at p. 631.)

ability to remove himself from his abuser; the County had that ability but did not use or exercise it.

Moral blame should not be assigned when the defendant did not know or have reason to know that a particular individual would sexually abuse the plaintiff. (*Doe v. United States Youth Soccer Assn., Inc., supra*, 8 Cal.App.5th at p. 1137 [no moral blame attributed to a soccer league for failing to conduct criminal background checks on prospective coaches where there was no evidence the league knew a particular coach would sexually abuse the plaintiff].) Nevertheless, at the summary judgment stage, some moral blame must be assigned to the County based on R.S.'s statement to the social worker about the "yucky" showers with his father, and the County's apparent failure to respond. (See *Los Angeles, supra* 70 Cal.App.5th at p. 680 [attributing moral blame to archdiocese because it took minimal action to prevent sexual abuse of children, despite "significant disparity in knowledge, sophistication, and control"].)

*The policy of preventing future harm.* The societal goal of safeguarding youth from sexual abuse weighs strongly in favor of imposing a duty on the County to protect children in foster care. (See *Los Angeles, supra*, 70 Cal.App.5th at pp. 680–681.) Recognizing a duty on the part of the County serves the policy of preventing future harm.

*Burden.* We also consider the burden that recognizing a tort duty would impose on the defendant and the community. (*Regents, supra*, 4 Cal.5th at p. 633.) This burden is analyzed as of the time the duty was allegedly owed to the plaintiff. (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1150.) Generally, the adoption of policies that protect children from sexual abuse do not impose a substantial burden on an agency, especially

21

when such policies have been enacted before the complaint is filed. (*Los Angeles, supra*, 70 Cal.App.5th at pp. 681–682.)

Many of the cases applying the *Rowland* factors do so in the context of organizations in which parents have voluntarily placed their children in the care or control of someone else. In the case of a child in the foster care system, however, the participation of the child is not voluntary. Generally, the County has taken the child away from the custodial parent or an emergency has arisen causing the County to step in. The County selects the home in which the child will be placed. The County is the only organization doing this work, and the parent and child have no choice not to participate. Under such circumstances, it is reasonable to expect the County to bear a burden higher than those imposed on organizations where participation is voluntary. (See *Los Angeles, supra*, 70 Cal.App.5th at p. 682.)

*Insurance.* The final *Rowland* factor is the availability of insurance for the risk involved. The record contains no information about the County's ability to obtain insurance, or to self-insure, for cases such as R.S.'s.

In sum, R.S. was in a special relationship with the County, and the County had a duty to act reasonably to protect R.S. from being harmed by the criminal conduct of third parties. Based on the evidence offered in connection with the motion for summary judgment, the County failed to establish the *Rowland* factors support an exception to imposing a duty on the County to act with reasonable care to prevent the sexual abuse of minors in its custody when those minors are placed in foster homes. The trial court erred by granting summary judgment on the ground the County owed no duty to R.S.

## IV.

### THE COUNTY FAILED TO ESTABLISH THERE WAS NO BREACH OF THE DUTY OWED TO R.S.

Having found the County owed no duty to R.S., the trial court did not address whether the County breached any such duty. Although breach had been alleged in the complaint, it was addressed in the motion for summary judgment in a cursory manner based on the following undisputed material facts:

"Plaintiff recalls telling his social worker, Barbara Voss, at approximately 9-years-old (1971), that 'I feel really weird taking a shower with dad,' and he remembers saying 'it was yucky.' This is the only incident he alleges that he reported the abuse while residing in the Graubner foster home."

"Plaintiff did not tell Barbara Voss that Howard Graubner sexually abused him or touched his genitals, and did not describe any conduct that consists of sexual abuse."

"There no longer exists any Juvenile Court or Social Service Agency records relating to Plaintiff, his dependency proceedings, or foster care placement."

"Plaintiff was already out of the Graubner foster home in 1986 when the County of Orange/Orange County Social Services Agency first became aware of and investigated allegations that Howard Graubner had sexually abused his foster/adopted children."

This showing is insufficient to shift the burden to R.S. to prove a triable issue of material fact. Even if the County had shifted the burden to R.S., triable issues as to breach still exist. The undisputed material facts showed R.S. complained to the social worker about feeling "weird" and

23

"yucky" about showering with his foster father. Given Howard's later written admissions, it is undisputed that R.S. was sexually abused by the foster father. The County offered no evidence, written or otherwise, about what the social worker did or did not do in response to R.S.'s complaint. This is enough to defeat summary judgment on the issue of breach.

## DISPOSITION

The judgment is reversed. Appellant to recover costs on appeal.

GOODING, J.

WE CONCUR:

MOTOIKE, ACTING P. J.

DELANEY, J.

24